UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────┐
│  USDC SDNY                                   │
│  DOCUMENT                                     │
│  ELECTRONICALLY FILED                         │
│  DOC #:                                        │
│  DATE FILED: 7/10/2025                        │
└─────────────────────────────────────────────┘
```

JULIANNA WASSERMAN,

                              Plaintiff,

              -against-                                     24-CV-01719 (MMG)

NEW YORK CITY DEPARTMENT OF                         **OPINION & ORDER**
EDUCATION, et al.,

                              Defendants.

MARGARET M. GARNETT, United States District Judge:

Plaintiff Julianna Wasserman, a preschool teacher at Public School 290 ("P.S. 290"), brought this action against her employer, the New York City Department of Education ("DOE"), alleging interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, including her right to take medical leave in connection with a knee injury, as well as discrimination and retaliation against her for exercising such rights, in violation of the FMLA and New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-101 *et seq.* The DOE has moved to dismiss the Amended Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Dkt. No. 23. For the reasons stated herein, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## FACTS & PROCEDURAL BACKGROUND

Wasserman initiated this action and filed the Complaint on March 6, 2024. *See* Dkt. No. 1. On July 8, 2024, Wasserman filed the Amended Complaint, alleging four claims against the DOE and other unidentified individuals: (1) a claim of interference with her FMLA rights; (2) a claim of "discrimination" and retaliation under the FMLA; (3) a claim of discrimination under the NYCHRL; and (4) a claim of retaliation under the NYCHRL. *See* Dkt. No. 15 ("Amended

Complaint" or "Am. Compl."). On August 29, 2024, the DOE moved to dismiss the Amended

Complaint. Dkt. No. 23.[1] The facts below are drawn from the Amended Complaint and taken as

true for purposes of this Opinion.

At all times relevant to the Amended Complaint, Wasserman worked as a preschool

teacher at P.S. 290, a public school located on the Upper East Side of Manhattan, during the

2021-22 academic year. *See id.* ¶¶ 16–17. Wasserman was employed by the DOE, the New

York City governmental agency responsible for the administration of New York City's public

school system, which includes P.S. 290. *See id.* ¶¶ 10–11.

On or about April 4, 2022, Wasserman fell outside of her apartment and injured her knee,

tearing her anterior cruciate ligament and meniscus. *See id.* ¶ 18. As a result of her injuries,

Wasserman was unable to walk and required support to stand and move. *See id.* In the days

following her injury, Wasserman took some unspecified amount of time off from work. *See id.*

¶ 21. At some point while Wasserman was on leave, Doreen Esposito, then-Principal of P.S.

290, "strongly discouraged" Wasserman from taking any additional time off from work before

the end of the academic year in June. *See id.* ¶ 19. Specifically, by way of one of her assistants,

Principal Esposito told Wasserman that she "would not want to see Wasserman not get asked

back the following year because she took time off." *See id.* ¶ 20. Wasserman was also contacted

by Assistant Principal Amy O'Brien and told "to return to work as soon as possible." *See*

---

[1] The Court shall refer to the memoranda of law in support of and opposition to the motion to dismiss as follows: Dkt. No. 24 ("Mot.") and Dkt. No. 27 ("Opp."). Pursuant to the parties' proposed briefing schedule, which the Court adopted by Order on September 11, 2024 (Dkt. No. 26), the DOE's deadline to file a reply in further support of its motion was due on October 25, 2024. On October 28, 2024, upon observing that the deadline had passed without any submission, the Court granted leave for the DOE to file a reply no later than October 30, 2024, and if the DOE still failed to file a reply by that date, the Court would consider the motion fully briefed. *See* Dkt. No. 28. To date, the DOE has not filed a reply. At the Court's direction, the parties attended a mediation conference in February 2025, but were not able to resolve any issues in the case. *See* Dkt. Nos. 29–33.

*id.* ¶ 21.  Because she felt mounting pressure and concern over her career, Wasserman returned to work on some unspecified date prior to the end of the academic year, although she struggled to move around the classroom and school building on the assistive devices necessitated by her injury.  *See id.* ¶¶ 20–21.

During the following 2022-23 academic year, on or about October 4, 2022, Wasserman fell again while walking down a stairwell at P.S. 290, and re-injured the same knee that she had injured in April.  *See id.* ¶ 22.  The injury inhibited Wasserman's ability to bend, walk, stand, and lift, and caused Wasserman pain.  *See id.* ¶ 24.  A few days after the fall, on October 6, 2022, Wasserman notified the P.S. 290 administration of her injury and filled out an incident report the following day, on or about October 7, 2022.  *See id.* ¶ 23.  On or about October 12, 2022, Wasserman visited a doctor, who confirmed that Wasserman had likely re-torn her ligaments and would require physical therapy, at minimum, and potentially surgery to permanently re-stabilize her knee and allow her to walk without incident or pain.  *See id.* ¶ 25.  Wasserman regularly attended physical therapy for approximately two months, but her knee stability did not improve.  *See id.* ¶ 26.  By December 13, 2022, Wasserman's doctors confirmed that her knee required surgery.  *See id.* ¶ 27.  At a follow-up appointment around the end of January 2023, Wasserman's doctor advised that she was beginning to develop long-term issues with the integrity of her knee, including arthritis, which would worsen until she underwent surgery.  *See id.* ¶ 28.

On January 27, 2023, Wasserman submitted a letter from her doctor to Assistant Principal O'Brien, regarding her need for medical leave to undergo surgery.  *See id.* ¶ 30.  Later that same day, Wasserman met with Principal Esposito, who was visibly angry, yelled at Wasserman over her request for medical leave, and said that Wasserman "ha[d] three months

[during the summer] to take time off to do th[e] [surgery]" and that she was "kind of turned off by [Wasserman's request]." *See id.* ¶ 31. Then, Principal Esposito "abruptly left the room" and told Wasserman she "need[ed] a break from this conversation." *See id.*

On February 7, 2023, Wasserman met again with Principal Esposito and Assistant Principal O'Brien. *See id.* ¶ 32. At that meeting, Principal Esposito and Assistant Principal O'Brien told Wasserman that (1) they "could not guarantee that she [would] have her same job again when she comes back [from medical leave]"; (2) Wasserman could not take leave because the school did not have enough time to find a replacement teacher; (3) Wasserman was not "thinking about the whole picture and the impact" her action would have on students; (4) Wasserman needed to "work on [her] management," which Wasserman interpreted as a reference to her work performance; (5) if she took leave, Wasserman would not be able to get tenure as planned, and Principal Esposito would tell the Superintendent that she did not think Wasserman should get tenure at this time; and (6) Assistant Principal O'Brien was disappointed with Wasserman's request for medical leave. *See id.* ¶ 31. Also in or around February 2023, Principal Esposito took a further incident report out of Wasserman's hands and told her that "if [they] did [an incident report] for every time something happened, [they would] have piles [all over the office]." *See id.* ¶ 29.

Ultimately, at some later point in time, Wasserman's request for medical leave was approved, and she underwent surgery and took some unspecified period of time, at least five months, to recover. *See id.* ¶¶ 33, 35. Prior to undergoing her surgery, Principal Esposito made Wasserman pack up her desk in front of her colleagues and directed Wasserman not to communicate with her students or parents except to inform them that she would be taking medical leave. *See id.* ¶ 34.

At some point shortly thereafter, Wasserman learned that her leave was unpaid, and alleges that the DOE had not informed her of the necessary steps to ensure she was paid and no such administrative steps were taken. *See id.* ¶ 35. As a result of the foregoing actions that Wasserman attributes to the DOE, Wasserman has had "to make ends meet through ways that incurred penalties, fees, and interest," and, in addition to her loss of income and other compensation and benefits, Wasserman has allegedly suffered future pecuniary loss, emotional distress, inconvenience, loss of enjoyment of life, and humiliation. *See id.* ¶¶ 36–39.

## DISCUSSION

## I.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in Wasserman's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether Wasserman has pled sufficient facts to nudge her claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.    THE AMENDED COMPLAINT ADEQUATELY STATES ONLY AN INTERFERENCE CLAIM UNDER THE FMLA

The DOE has moved to dismiss the Amended Complaint in its entirety, arguing that Wasserman has failed to adequately allege all four of her claims under the FMLA and NYCHRL. The Court finds that Wasserman has pled sufficient facts in the Amended Complaint to state a plausible FMLA interference claim in connection with her leave during the 2022-23 academic year, but that Wasserman has otherwise failed to state any of her other claims under the FMLA and NYCHRL and accordingly those claims should be dismissed. The Court will address each claim in turn.

### A.    FMLA

Under the FMLA, eligible employees are entitled to twelve weeks per year of unpaid leave because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *See* 29 U.S.C. § 2612(a)(1)(D). The Second Circuit recognizes separate claims of interference and retaliation under the FMLA. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). "[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded [her] ability to exercise rights under the FMLA." *Id.* Concurrently, an employee may bring a retaliation claim based on "actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* Wasserman asserts both interference and retaliation claims, Am. Compl. ¶¶ 40–57, but only the interference claim is adequately pled.

#### 1.    FMLA Interference is Sufficiently Pled, but Only for 2023 Leave

In order to prevail on a claim of interference with her FMLA rights, a plaintiff must establish that: (1) she is an eligible employee under the FMLA; (2) the defendant is an employer

as defined by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice

to the defendant of her intention to take leave; and (5) the defendant denied or otherwise

interfered with benefits to which she was entitled under the FMLA. *Graziadio v. Culinary Inst.*

*of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). The DOE does not dispute the first, second, and third

elements, and the Court finds that the Amended Complaint sufficiently alleges that Wasserman is

an employee entitled to leave under the FMLA, *see* Am. Compl. ¶ 14, and that the DOE is an

employer within the meaning of the FMLA, *id.* ¶ 13.

However, the DOE does dispute that Wasserman has adequately alleged the fourth and

fifth elements of her interference claim. Specifically, the DOE argues that Wasserman failed to

properly allege that (i) she gave notice of her intention to take leave with respect to her original

injury in April 2022, and (ii) she was denied benefits to which she was entitled under the FMLA.

*See* Mot. at 4–9. The Court finds that the Amended Complaint sufficiently states a claim of

FMLA interference in connection with Wasserman's leave in 2023 but fails to state an

interference claim based on Wasserman's leave in April 2022.

### i.    Lack of Notice Allegations Dooms Claims Related to April 2022 Leave

While Wasserman is correct that sufficient notice "need not expressly assert rights under

the FMLA or even mention the FMLA," *Williams v. Westchester Med. Ctr. Health Network*, No.

21-CV-03746 (KMK), 2025 WL 903757, at *21 (S.D.N.Y. Mar. 25, 2025) (quoting *Coutard v.*

*Mun. Credit Union*, 848 F.3d 102, 111 (2d Cir. 2017)), the Amended Complaint is devoid of any

allegations regarding what, if anything, Wasserman indicated to Principal Esposito or Assistant

Principal O'Brien that would have put them on sufficient notice to reasonably determine whether

the FMLA could apply to her leave following her alleged injury in April 2022.

7

Under the relevant regulations governing FMLA leave, if the need for leave is unforeseeable, "an employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request," including whether "the employee [is] unable to perform the functions of [her] job" as a result of the events necessitating leave. 29 C.F.R. § 825.303(b). "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the [FMLA]." *Id.*; *see, e.g.*, *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 409 (S.D.N.Y. 2007) (holding that calling in sick and providing vague doctors' letters were insufficient to provide notice of the employee's intent to take FMLA leave); *see also* 29 C.F.R. § 825.208(a)(1) ("An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied."). When leave is unforeseeable, an employee must provide notice to her employer "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

Here, while the Amended Complaint describes what Principal Esposito and Assistant Principal O'Brien allegedly communicated to Wasserman in the days following her April 2022 injury, *see* Am. Compl. ¶¶ 19–20, the Amended Complaint does not allege that Wasserman made a request for leave, either formally or informally, or provided Principal Esposito and Assistant Principal O'Brien any information regarding her injury sufficient for them to reasonably determine whether the FMLA could apply to her leave. *See, e.g.*, *Fitzgerald v. We Co.*, No. 20-CV-05260 (AT), 2022 WL 952963, at *9 (S.D.N.Y. Mar. 30, 2022) (granting summary judgment in favor of the employer where there was no evidence that the employee actually requested time off); *cf. Williams*, 2025 WL 903757, at *21 (finding sufficient notice where the employee alleged

he "always kept his supervisors in the loop about the basis of his sick day usage" and that his absences were related to injuries sustained from a car accident); *Ejiogu v. Grand Manor Nursing and Rehabilitation Ctr.*, No. 15-CV-00505 (DLC), 2017 WL 1184278, at *7 (S.D.N.Y. Mar. 29, 2017) (finding sufficient notice where the employee informed her employer that "her mother was 'very ill' and requested an opportunity to visit her"). "Although [a] plaintiff need not have given formal notice that she would be taking leave, a plaintiff must objectively assert . . . her FMLA rights before she can prevail on an 'interference by discouragement' theory." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 535–36 (S.D.N.Y. 2009).

In her opposition, Wasserman mischaracterizes this fatal aspect of the Amended Complaint as a dispute over whether the notice took a particular form or used "magic words," and wrongly asserts that "the Court may draw the inference that any required notice was timely." *See* Opp. at 7–8. While the Court must draw all reasonable inferences in Wasserman's favor, here, the Amended Complaint contains no allegation whatsoever that Wasserman even apprised Principal Esposito and Assistant Principal O'Brien that she was taking leave or what the circumstances of her leave were. As Wasserman concedes in her opposition, the "critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *See id.* at 8 (quoting *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-08716 (PAE), 2024 WL 1117180, at *14 (S.D.N.Y. Mar. 13, 2024)).

Accordingly, to the extent Wasserman seeks damages and compensation related to any time she took off in April 2022, the Court finds that Wasserman's FMLA interference claim fails as a matter of law and must be dismissed because the Amended Complaint fails to allege that

Wasserman imparted any information to the DOE regarding a request for or the circumstances of her April 2022 leave.

### ii. 2023 Leave Allegations Are Sufficient to Plead Interference with FMLA Benefits

In contrast, Wasserman's allegations regarding interference with her rights under the FMLA in connection with her 2023 leave are sufficient to survive a motion to dismiss. While the Amended Complaint alleges Wasserman apprised Principal Esposito of her re-injury and her need for surgery, *see* Am. Compl. ¶¶ 23, 30, the DOE argues that Wasserman has failed to allege any denial of FMLA benefits. Mot. at 4–8. Specifically, the DOE argues, *inter alia*, that (1) Principal Esposito's alleged failure to approve Wasserman for paid leave is insufficient to support an interference claim because the FMLA only requires unpaid leave; (2) Wasserman has not been denied the right to return to her position or an equivalent position at P.S. 290, as she is still employed by the DOE; and (3) Wasserman has not been prejudiced in any way because she took at least five months of unpaid leave, which exceeds the 12 weeks of leave provided under the FMLA. *Id.*

A little over a week after the DOE filed its moving papers, in *Kemp v. Regeneron Pharmaceuticals Inc.*, the Second Circuit expressly held that "an employer can violate the FMLA merely by interfering with the employee's benefits under the FMLA without actually denying the employee's request for those benefits." 117 F.4th 63, 69 (2d Cir. 2024). The Second Circuit reasoned that discouraging or impeding an employee from exercising benefits to which she is entitled is sufficient interference or restraint within the meaning of the plain and unambiguous text of section 2615(a)(1) of the FMLA. *See id.*

In light of *Kemp*, the heart of the DOE's arguments misses the mark—viewing the allegations in the light most favorable to Wasserman, Wasserman has stated a claim that the

DOE interfered with her FMLA rights by attempting to discourage her from taking leave in 2023. Even though Wasserman ultimately did take leave in 2023, the Amended Complaint includes allegations of multiple statements by Principal Esposito and Assistant Principal O'Brien which, if true, could reasonably be viewed as threats to Wasserman's continued employment, and therefore efforts to discourage or otherwise restrain Wasserman from exercising her rights under the FMLA. *See* Am. Compl. ¶¶ 20–21, 29, 31–32, 34.

While the Court finds that Wasserman has properly stated an interference claim on the theory that officials in the DOE attempted to discourage her from taking leave in 2023, the Court agrees that the other possible theories of interference that the DOE seeks to preclude are not properly alleged in the Amended Complaint.

For example, while the FMLA does not require the 12-week leave to be paid leave, an employee may elect "to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave . . . for any part of the 12-week period." *See* 29 U.S.C. §§ 2612(d)(1), (2)(B). The Amended Complaint is devoid of factual allegations concerning what entitlement, if any, Wasserman had to be paid during her 2023 leave. *See* Am. Compl. ¶¶ 35–36. In her opposition, Wasserman generally asserts that the DOE "prevented [her] from using paid benefits that are available to all similarly situated teachers at the DOE." *See* Opp. at 4.[2] But the Amended Complaint does not specifically identify or allege any paid benefits the DOE should have made available to but withheld from Wasserman, or when, how, or why the DOE purportedly failed to undertake certain unspecified "administrative steps" or notify Wasserman

---

[2] Given the passing references, which appear to be connected only to Wasserman's NYCHRL claims, *see* Opp. at 2 & 12, and Wasserman's failure to specifically address the DOE's arguments that she cannot base her interference claim on the fact that her 2023 leave was unpaid, the Court may also deem this theory of interference abandoned. *See Enechi v. City of New York*, No. 20-CV-08911 (AT), 2023 WL 6293941, at *10 (S.D.N.Y. Sept. 27, 2023).

of steps that she could have taken to ensure she was paid while on leave.  *See* 29 U.S.C. §

2612(d)(2)(B) ("[N]othing in this subchapter shall require an employer to provide paid sick leave

or paid medical leave in any situation in which such employer would not normally provide any

such paid leave."); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 430 (S.D.N.Y. 2004)

("[T]he right to notice under the [FMLA] is not an independent right giving rise to suit where

failure to notify in no way affected the employee's leave.").  Wasserman does not even allege the

minimal facts that are surely within her personal knowledge regarding how many days of

accrued sick leave or annual leave were available to her at the start of her 2023 leave.

     Similarly, the Amended Complaint is devoid of allegations with respect to what, if

anything, happened to Wasserman's position at P.S. 290 after she took her 2023 leave, and

Wasserman does not dispute the DOE's assertion that she is still employed by the DOE.  *See*

Mot. at 6; Opp. at 3–4.  An FMLA interference claim can be premised on a failure to reinstate an

employee to her original position or an equivalent.  *See, e.g.*, *Roberts v. Ground Handling, Inc.*,

499 F. Supp. 2d 340, 355–56 (S.D.N.Y. 2007).  However, as the DOE points out, Wasserman

does not allege that she was removed from her position at P.S. 290, demoted in some way, or

denied the opportunity to return to an equivalent teaching position with the DOE.  Accordingly,

Wasserman cannot state an interference claim on a reinstatement theory.

     Notwithstanding the foregoing foreclosed theories of interference, the DOE's motion to

dismiss Wasserman's FMLA interference claim is denied because the Amended Complaint

sufficiently alleges that the DOE interfered with Wasserman's FMLA rights by attempting to

discourage her from taking leave in 2023.[3]

---

[3] The DOE contends that Wasserman was only entitled to approximately 22 weeks of leave but
does not indicate how it came to that calculation.  *See* Opp. at 7.  To the extent the DOE is arguing that
Wasserman should be precluded from seeking damages or compensation for leave she took in excess of

### 2.    FMLA Retaliation Claim Must be Dismissed[4]

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam).  If the plaintiff makes out a *prima facie* case, an FMLA retaliation claim is subject to the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Potenza*, 365 F.3d at 168.

The DOE does not dispute that Wasserman was qualified for her position.  However, the DOE does dispute that Wasserman has sufficiently alleged the other three elements,[5] and argues that Wasserman has failed to allege that the DOE took an adverse employment action, and Wasserman's attempt to file her October 2022 incident report was not an exercise of her protected rights under the FMLA.  *See* Opp. at 9–13.  The Court assumes for the sake of argument that Wasserman exercised her rights under the FMLA in connection with her request for leave in 2023, but nonetheless finds that Wasserman has failed to state an FMLA retaliation

---

22 weeks, the Court declines to rule on this particular issue at this time, without prejudice to renewal, because of the DOE's conclusory argument.

[4] As the DOE correctly asserts, courts in this Circuit do not recognize a cause of action for FMLA discrimination.  *See* Opp. at 10 n.5.  The Second Cause of Action in the Amended Complaint purports to be a claim for FMLA "Discrimination/Retaliation," *see* Am. Compl. ¶¶ 49–57, and Wasserman does not address this in her opposition.  Because Wasserman cannot assert a cognizable FMLA "discrimination" claim, *see supra* Section II(A), the Court shall refer to the Second Cause of Action solely as an FMLA retaliation claim.  *But see* 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA].")

[5] Wasserman claims the DOE only "partially contests" whether she has sufficiently alleged the first and third elements.  *See* Opp. at 10.  However, the fourth element necessarily incorporates and requires that Wasserman has sufficiently pled the third element, *i.e.*, an adverse employment action by the DOE.

claim because the Amended Complaint does not sufficiently allege any adverse employment action by the DOE.

As a threshold matter, in both the Amended Complaint and her opposition to the DOE's motion, Wasserman improperly conflates her interference claim and her retaliation claim. *See, e.g.*, Am. Compl. ¶ 32 (alleging Principal Esposito and Assistant Principal O'Brien interfered with Wasserman's ability to take leave and retaliated against her); Opp. at 11 (arguing the allegations in paragraphs 32 and 34 of the Amended Complaint constitute both interference and retaliation). As discussed *supra*, claims of interference and claims of retaliation under the FMLA are treated separately. *See Woods*, 864 F.3d at 166. The Second Circuit has described FMLA retaliation claims as an *ex post* protection for employees who avail themselves of rights granted by the FMLA, but are then subject to some adverse employment action by their employer. *See id.*; *see also Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 655 F. Supp. 3d 412, 470 (S.D.N.Y. 2023) ("The FMLA's protection against retaliation 'encompasses the employer's conduct both during and after the employee's FMLA leave.'") (quoting *Carla Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-CV-00577 (MKB), 2019 WL 1994488, at * 17 (E.D.N.Y. May 6, 2019)). While Wasserman does not allege the exact date that her leave began, Wasserman's allegations regarding what Principal Esposito and Assistant Principal O'Brien said in the February 7, 2023 meeting cannot, as a matter of law, constitute adverse employment action sufficient for a retaliation claim, either individually or in the aggregate with other allegations in the Amended Complaint, because these alleged statements were made <u>prior</u> to Wasserman's leave.

On this issue, the only case Wasserman cites to in her opposition is *Kurtanidze v. Mizuho Bank, Ltd.*, in which the court found that alleged "curtailment[s]" of the employee's work

14

assignments, including excluding him from meetings related to his job, excluding him from group emails, and ultimately terminating him, were the only alleged adverse actions pled that survived the motion to dismiss. 2024 WL 1117180, at *15. Critically, however, these purported acts of retaliation occurred after the employee returned from paternity leave. *See id.* at *3.

The only allegations here that could possibly constitute adverse employment action are (i) Principal Esposito's alleged directives to Wasserman to pack up her desk and cease contact with her students and parents, Am. Compl. ¶ 33; and (ii) the DOE's alleged failure to ensure Wasserman was paid during the course of her leave, *id.* ¶¶ 35–36. However, these allegations, either individually or in the aggregate, do not constitute adverse employment actions sufficient to support a claim of FMLA retaliation.

In the context of FMLA retaliation claims, "a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights." *Amley*, 2021 WL 4429784, at *13 (quoting *Millea v. Metro-N.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011)). This assessment is objective—the test is whether a reasonable employee would be deterred, without consideration of a plaintiff's "unusual subjective feelings." *Id.* (quoting *Burlington N. & Santa Fe Ty. Co. v. White*, 548 U.S. 53, 68–69 (2006)). Accordingly, "petty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims." *Millea*, 658 F.3d at 165 (internal references omitted).

The DOE correctly identifies quintessential examples of adverse employment actions, such as a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or a formal reprimand. *See* Mot. at 10 (quoting *Amley*, 2021 WL 4429784, at *13). Wasserman also

correctly asserts that this list is not exhaustive.  *See* Opp. at 10.  Even minor acts of retaliation

can be sufficiently "substantial in gross" and therefore amount to adverse employment action.

*See Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 470–71 (S.D.N.Y. 2011) (quoting *Hicks v.*

*Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).  "In determining whether conduct amounts to an

adverse employment action, the alleged acts of retaliation need to be considered both separately

and in the aggregate[.]"  *Hicks*, 593 F.3d at 165.  For example, in *Smith*, the court found the

plaintiff had sufficiently alleged adverse employment actions to support his retaliation claim,

based on allegations that his employer initiated a form of disciplinary review, resulting in the

loss of his right to earn overtime pay, and that he was harassed by his supervisors, taken off his

post, and ordered to perform duties outside his job description.  *See* 769 F. Supp. 2d at 471.

 Here, however, the Court finds that the Amended Complaint does not sufficiently allege

that the DOE took adverse employment action against Wasserman.  Even when viewing the

allegations in the light most favorable to Wasserman, Principal Esposito's alleged directives to

Wasserman to pack up her desk and limit contact with her students and parents amount, at worst,

to "petty slights" or a "simple lack of good manners," which cannot support a retaliation claim.[6]

*See Millea*, 658 F.3d at 165.  Wasserman does further allege that Principal Esposito's actions

suggested that she "had already made the decision that Wasserman would not be permitted to

return to her classroom," even if Wasserman ultimately was determined to be medically fit to

---

[6] Moreover, although even the worst possible interpretation does not support a finding of adverse employment action, the Court notes that these actions appear entirely normal and reasonable.  Given the uncertainty about the length of Wasserman's surgery-related absence, requiring her to remove her personal items from her classroom (space that would presumably be needed for a substitute teacher or, at a minimum, could not be left at the school over the summer break) is a reasonable and non-retaliatory supervisory directive.  Likewise, the instruction to merely inform students and parents that she was taking a medical leave and not otherwise have personal contact or share personal information with preschool students or parents is consistent with standard practices at any public school and is not, on its face, retaliatory or punitive.

"return."  *See* Am. Compl. ¶ 34.  But the Amended Complaint is silent with respect to what

decision, if any, Principal Esposito ultimately made with respect to Wasserman's return from

leave.  Again, as discussed *supra*, the Amended Complaint does not even specify whether

Wasserman is still employed at P.S. 290—in paragraph 1 of the Amended Complaint,

Wasserman simultaneously describes the DOE as her employer, while also describing Principal

Esposito as "her then-Principal," which could mean that either Wasserman or Principal Esposito

is no longer employed at P.S. 290.  *See id.* ¶ 1; *but see* Opp. at 3 ("Plaintiff Julianna Wasserman

worked as a Universal Pre-K teacher at PS290 . . . .").

        Similarly, as the DOE correctly asserts, even assuming that Wasserman was, in fact, not

paid while on leave, that fact is insufficient to support her retaliation claim, either alone or in

combination with any other allegations.  *See* Mot. at 10–11.  The DOE argues that the fact that

Wasserman's leave was unpaid cannot constitute unlawful retaliation because the DOE was

lawfully discharging its obligations under the FMLA, which requires only unpaid leave.  *See id.*

Wasserman does not address the DOE's arguments on this point in her opposition.  *See* Opp. at

10–11.  As discussed *supra*, Wasserman has not plausibly alleged any entitlement to paid leave,

and no such right can be found in the FMLA itself.  The FMLA expressly does not "require an

employer to provide . . . paid medical leave in any situation in which such employer would not

normally provide any such paid leave."  29 U.S.C. § 2612(d)(2)(B).  Moreover, the FMLA does

not confer an actionable right to notice regarding unpaid status where, as here, the "failure to

notify in no way affected the employee's leave."  *Geromanos*, 322 F. Supp. 2d at 430.

        In short, Wasserman's allegations, even if true and even viewed in the aggregate, do not

amount to adverse employment actions taken by the DOE within the meaning of the FMLA.

Because the Amended Complaint does not sufficiently allege that the DOE took any adverse

action against Wasserman during or after her leave, Wasserman has failed to state her retaliation claim as a matter of law and that claim is dismissed.

## B.    NYCHRL

The Second Circuit has ruled that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims and emphasized that conduct not actionable under federal and state law may still be actionable under the broader New York City standards." *Uttarwar v. Lazard Asset Mgt. LLC*, No. 24-1085-cv, 2025 WL 704278, at *3 (2d Cir. Mar. 5, 2025); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013). Despite the more lenient pleading standards for claims brought under the NYCHRL, the Court finds that, for the reasons that follow, Wasserman has failed to state either a discrimination or a retaliation claim under the NYCHRL.

### 1.    NYCHRL Discrimination Claim Must be Dismissed

"The NYCHRL's standards governing discrimination claims are as or more generous to plaintiffs than those under the analogous federal statutes[.]" *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (quoting *Estevez v. P Sales & Trucking LLC*, No. 17-CV-01733 (PAE), 2017 WL 5635933, at *3 (S.D.N.Y. Nov. 22, 2017)); *Workneh v. Super Shuttle Int'l, Inc.*, No. 15-CV-03521 (ER), 2016 WL 5793744, at *9 (S.D.N.Y. Sept. 30, 2016) ("NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts.") (quoting *LaSalle v. City of New York*, No. 13-CV-05109 (PAC), 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015)); *Mihalik*, 715 F.3d at 109 ("[E]ven if the challenged conduct is not actionable under federal . . . law, federal courts must consider separately whether it is actionable under the broader New York City standards.").

The NYCHRL prohibits "an employer or an employee or agent thereof, because of [an] actual or perceived . . . disability . . .[,] [t]o refuse to hire or employ or to bar or to discharge

18

from employment such person; or . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code §§ 8–107(l)(a)(2)–(3). "To state a claim for discrimination under the NYCHRL, a plaintiff need only show differential treatment of any degree based on a discriminatory motive." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 173 (E.D.N.Y. 2017). The NYCHRL "does not require a connection between the discriminatory conduct and a materially adverse employment action." *Gonzalez*, 377 F. Supp. 3d at 300 (internal references omitted) (quoting *Garrigan v. Ruby Tuesday, Inc.*, No. 14-CV-00155 (LGS), 2014 WL 2134613, at *3 (S.D.N.Y. May 22, 2014)). However, a plaintiff "must still allege facts on the basis of which a court can find differential treatment—*i.e.* the plaintiff was 'treated less well—because of a discriminatory intent.'" *Workneh*, 2016 WL 5793744, at *9 (quoting *LaSalle*, 2015 WL 1442376, at *5–6). "The proper inquiry under the NYCHRL is whether a plaintiff 'was treated "less well" because of her [membership in a protected class].'" *Pena-Barrero v. City of New York*, No. 14-CV-09550 (VEC), 2017 WL 1194477, at *15 (S.D.N.Y. Mar. 30, 2017) (alterations in original) (quoting *Mihalik*, 715 F.3d at 111); *Lebowitz*, 407 F. Supp. 3d at 173–74 ("However, even under this more liberal pleading standard, a plaintiff must still plausibly allege that he or she was subjected to unequal treatment because of a protected characteristic."); *see also Workneh*, 2016 WL 5793744, at *9 ("Courts must be mindful that the NYCHRL is not a general civility code; the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive, i.e., because of the protected characteristic.").

Despite the more liberal standard applicable to NYCHRL discrimination claims, Wasserman has failed to sufficiently allege that she was treated differently because of her alleged knee injury or any associated need to take medical leave. In the Amended Complaint,

Wasserman summarily asserts that the "DOE treated [her] less well because of her disability, all of which was adverse employment action that was permitted and condoned by [the] DOE[,]" *see* Am. Compl. ¶ 60, but the Amended Complaint does not contain well-pleaded factual allegations that Wasserman was treated unequally <u>because of</u> her knee injury, or, indeed, treated differently from non-disabled employees in any respect. The Court need not accept the Amended Complaint's threadbare recitals of the elements of Wasserman's NYCHRL discrimination claim, supported by mere conclusory statements with no supporting factual allegations. *See Ashcroft*, 556 U.S. at 663.

In her opposition, Wasserman argues that she has satisfied her burden at this stage because she alleges that the DOE "offers paid leave benefits [to other employees] that [the] DOE and its managers prevented [Wasserman] from utilizing during her second leave [in 2023]" and that "[Principal] Esposito threatened [Wasserman's] ability to receive tenure[.]" *See* Opp. at 12. Wasserman further points to Principal Esposito's alleged "degrading and chilling comments about her disability and need for leave" as sufficient allegations of differential treatment and of Principal Esposito's "bias" against Wasserman on the basis of her disability.[7] *See id.* at 13.

As an initial matter, as discussed *supra*, the Amended Complaint is, at best, vague with respect to what "paid leave benefits" Wasserman was entitled to or whether Wasserman has, in fact, been precluded from receiving tenure. However, even assuming that Wasserman was denied certain benefits available to other DOE employees and precluded from receiving tenure, the Amended Complaint does not allege that the DOE acted with discriminatory motive based on Wasserman's knee injury. *See, e.g., Workneh*, 2016 WL 5793744, at *9 (finding the plaintiff

---

[7] While Wasserman does not mention Assistant Principal O'Brien in her opposition, the Amended Complaint seemingly attributes some comments made in the February 7, 2023 meeting to Assistant Principal O'Brien. *See* Am. Compl. ¶ 32.

failed to allege his termination was caused by a discriminatory motive on the basis of his

protected status); *cf. Fulton v. City of New York*, No. 20-CV-00144 (WFK) (PK), 2021 WL

11716365, at *13 (E.D.N.Y. Mar. 15, 2021) (finding the plaintiffs sufficiently alleged

discrimination claims where they alleged veterans were more likely to suffer from disabilities

than their non-veteran counterparts and alleged specific instances of discrimination experienced

by the plaintiffs); *Leibowitz*, 407 F. Supp. 3d at 174 (finding the plaintiffs sufficiently pled

discrimination claims based on allegations that the defendants treated the plaintiffs differently

than younger teachers).

As to the alleged statements by Principal Esposito, while perhaps rude or insensitive,

whether viewed individually or as a whole her comments do not evince discriminatory intent on

the basis of Wasserman's injury. First, as discussed *supra*, the Amended Complaint does not

allege that Principal Esposito was even aware of Wasserman's purported disability in April 2022,

so her statements at that time could not plausibly have been motivated by discriminatory intent.

*See* Am. Compl. ¶¶ 19–20. Second, Principal Esposito's comments are specifically centered on

and reference Wasserman's leave, not her knee injury. *See id.* ¶ 32. Wasserman's knee injury is,

of course, implicated in Wasserman's request for leave in 2023. However, in viewing the

allegations in the light most favorable to Wasserman, while it is conceivable that Principal

Esposito's comments about Wasserman's leave in 2023 were motivated by animus or bias

against Wasserman's injury, the Amended Complaint does not contain sufficient facts to nudge

Wasserman's discrimination claim "across the line from conceivable to plausible." *See*

*Twombly*, 550 U.S. at 570. Unlike the *Samuel v. Devachan Hair & Spa, Inc.* and *Kurtiandze*,

cases to which Wasserman cites in her opposition, Principal Esposito's comments were not

plausibly caused by a discriminatory motive; given the lack of supporting allegations, it is at

least equally plausible that Principal Esposito would have had the same reaction to lengthy leave requests mid-year by any teacher for any reason. *Cf. Samuel*, No. 150598/2020, 2022 WL 103412, at *12 (Sup. Ct. N.Y. Cnty. Jan. 5, 2022) (involving comments based on the plaintiff's protected caregiver and gender status); *Kurtanidze*, 2024 WL 1117180, at *16 (involving comments based on the plaintiff's protected caregiver, gender, and familial status).

Accordingly, the Court finds that Wasserman has not plausibly alleged that she was subject to differential treatment based on her purported disability. Because Wasserman failed to state her NYCHRL discrimination claim, that claim is dismissed.

### 2.    NYCHRL Retaliation Claim Must be Dismissed

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011)). "For claims of retaliation, the plaintiff must show a 'causal link' between the protected activity and the retaliatory act." *Gonzalez*, 377 F. Supp. 3d at 301 (quoting *Kumaga*, 2010 WL 1444513, at *15); *see also Williams v. New York City Housing Auth.*, 335 F. App'x 108, 110 (2d Cir. 2009). "[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). A retaliation claim under the NYCHRL "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment." *Gonzalez*, 377 F. Supp. 3d at 301 (quoting *Stewart v. City of New York*, No. 11-CV-06935 (CM), 2012 WL 2849779, at *11 (S.D.N.Y. July 10, 2012)).

In the Amended Complaint, Wasserman alleges she is protected under the NYCHRL "because of her disability" and that by "removing her from her classroom and . . . failing to

properly administer her paid leave," the DOE engaged in "discriminatory conduct." *See* Am.

Compl. ¶¶ 67–68, 72. For the reasons discussed *supra*, *see* Section II(B), to the extent

Wasserman's NYCHRL retaliation claim sounds as a traditional retaliation claim based on

alleged discrimination, the Court finds that Wasserman has not sufficiently alleged that the DOE

engaged in any discriminatory conduct.[8] Therefore, even under the NYCHRL's more lenient

standard, the Amended Complaint does not and cannot allege that Wasserman took any action

opposing discrimination based on a protected status. *See, e.g.*, *Uttarwar v. Lazard Asset Mgmt.*

*LLC*, No. 22-CV-08139 (DEH), 2024 WL 1251177, at *15 (S.D.N.Y. Mar. 22, 2024) ("Even

under the NYCHRL, the mere facts that [the plaintiff] belonged to certain protected groups and

also complained of discrimination are insufficient to convert his complaints into allegations of

discrimination on the basis of his protected statuses.") (internal references omitted).[9]

Notwithstanding Wasserman's failure to allege discrimination by the DOE, Wasserman

also specifically alleges that the DOE's unlawful retaliation was in violation of Section 8-

107(7)(v) of the NYCHRL, which provides:

> It shall be an unlawful discriminatory practice for any person engaged in any
> activity to which this chapter applies to retaliate or discriminate in any manner
> against any person because such person has . . . . requested a reasonable
> accommodation under this chapter[.]

---

[8] In addition, for the reasons discussed above in Section (II)(A)(2), Wasserman has failed to plead any actionable denial of paid leave, whether to establish an entitlement to such paid leave or to establish differential treatment regarding paid leave.

[9] The parties primarily dispute whether Wasserman's attempt to file an incident report in February 2023 constituted "protected activity." *See* Mot. at 14; Opp. at 14 (arguing that "filing an incident report that is part and parcel to [Wasserman's] request for leave is another instance of protected activity"). As an initial matter, Wasserman does not specifically allege that she was attempting to complain about or otherwise oppose any alleged discrimination in her incident report. *See* Am. Compl. ¶ 29; *see also id.* ¶ 23 (regarding an incident report that was "filled out" on or about October 7, 2022). Moreover, for the reasons described *infra*, given that the incident report is "part and parcel" to Wasserman's request for FMLA leave, Wasserman's attempt to file the report does not constitute a request for a "reasonable accommodation" within the meaning of the NYCHRL.

*See* Am. Compl. ¶ 69; Opp. at 13–14.

The Court finds that Wasserman cannot, as a matter of law, state an NYCHRL retaliation claim under this theory of retaliation because Wasserman's request for leave under the FMLA and the related allegations in the Amended Complaint do not constitute "protected activity" within the meaning of the NYCHRL.

In a similar case, *Makharadze v. Ognibene*, the Second Department held that the plaintiff had failed to assert a retaliation claim under the NYCHRL because the defendants had "demonstrated, *prima facie*, that the plaintiff did not engage in protected activity." Index No. 520245/20, 2025 WL 1699451, at *2 (2d Dep't June 18, 2025). Like Wasserman, the plaintiff had sustained initial injuries resulting from a non-work-related fall and was granted leave under the FMLA. *Id.* at *1. Upon returning to work, the plaintiff fell again and sustained additional injuries. *Id.* Thereafter, the plaintiff applied for additional FMLA leave, which was denied, and her employment was ultimately terminated. *Id.* While the Second Department did not fully explain its reasoning for finding that the plaintiff did not engage in protected activity, in other contexts, courts have not treated a request for leave under the FMLA as a request for a "reasonable accommodation" under the NYCHRL. *Fasanello v. United Nations Int'l Sch.*, No. 19-CV-05281 (GHW), 2022 WL 861555, at *15 (S.D.N.Y. Mar. 23, 2022) ("Because FMLA leave is protected by federal law, not by the NYCHRL, . . . FMLA leave is not a 'protected activity' under the NYCHRL."); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2016). So, too, here, in light of *Makharadze*, and based on the facts alleged in the Amended Complaint, Wasserman has not alleged that she engaged in protected activity.

In her opposition, Wasserman argues that from "the moment [she] first requested an accommodation in the form of medical leave in 2021-22, she had engaged in protected activity under the NYCHRL." Opp. at 14. To support her argument, Wasserman cites to *Samuels v. Urban Assembly Charter Schools for Computer Science*. In *Samuels*, the court found that the plaintiff, a high school teacher, had stated a NYCHRL retaliation claim where the principal terminated her days after she had requested temporary medical leave following an incident in which she was hit in the head by a hard ball thrown by one of her students. No. 23-CV-01379 (RA), 2024 WL 4008165, at *2, 10–11 (S.D.N.Y. Aug. 30, 2024). The plaintiff in *Samuels*, however, did not allege that the medical leave she requested was under the FMLA, and her claims were not brought under the FMLA. *See id.* Rather, the plaintiff had brought, *inter alia*, claims under the ADA, New York State Human Rights Law, and NYCHRL, alleging disability discrimination and failure to accommodate. *See id.* Courts have separately treated and analyzed claims brought under the FMLA and the ADA, given the fundamental differences between the two statutes. *See Wright v. City of New York*, 2024 WL 3952722, at *8 (S.D.N.Y. Aug. 27, 2024) (The "structure of the FMLA and the ADA statutes are fundamentally different, and the Department of Labor's implementing regulations emphasize that claims under each statute must be analyzed separately.") (internal references omitted) (quoting *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020)); *see also Acker v. Gen. Motors L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017) ("Textual comparison . . . demonstrates why requesting FMLA leave alone is not a request for an ADA reasonable accommodation . . . . FMLA leave is by nature arguing that [an employee] cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that [s]he can perform the essential

functions of the job."); *but see also Mihalik*, 715 F.3d at 113 ("NYCHRL claims must be analyzed separately and independently from federal and state discrimination claims[.]").

Accordingly, because Wasserman has failed to allege that she engaged in protected activity, Wasserman has failed to state her NYCHRL retaliation claim, and that claim is also dismissed.

\*       \*       \*       \*

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant DOE's motion to dismiss the Amended Complaint. The sole remaining claim in this action is Plaintiff's FMLA interference claim in connection with her leave allegedly taken in early 2023. *See* Am. Compl. ¶¶ 40–48. The Clerk of Court is respectfully directed to terminate Dkt. No. 23.

It is further ORDERED that counsel for all parties shall appear for an Initial Pretrial Conference with the Court on **Tuesday, August 12, 2025 at 9:30 a.m.** The conference will be held in person in Courtroom 906 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007. Counsel are directed to confer with each other prior to the conference regarding settlement and each of the other subjects to be considered at a Fed. R. Civ. P. 16 conference. Additionally, in accordance with Rule II(A)(5) of the Court's Individual Rules & Practices, the parties are hereby ORDERED to file on ECF a joint letter, as well as a proposed Civil Case Management Plan and Scheduling Order attached as an exhibit to the joint letter, no later than **August 5, 2025**. The parties shall use this Court's form proposed Civil Case Management Plan and Scheduling Order, which is also available at https://nysd.uscourts.gov/hon-margaret-m-garnett.

Dated: July 10, 2025
     New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

27